IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**CHESTER GOSSETT**                                                   **PLAINTIFF**

**V.**                      **NO. 4:19-CV-181-DMB-JMV**

**ALLEGIANCE SPECIALITY
HOSPITAL OF GREENVILLE, LLC**            **DEFENDANT**

**OPINION AND ORDER**

Chester Gossett alleges that his employment by Allegiance Specialty Hospital of Greenville was wrongfully terminated due to his race. Seeking summary judgment, Allegiance argues that the decision to terminate Gossett was based on his previous felony conviction, not his race. Because the summary judgment record fails to show a genuine issue of material fact with respect to the reason for Gossett's termination, summary judgment will be granted. Accordingly, all pending motions in limine will be denied as moot.

**I
Procedural History**

On December 13, 2019, Chester Gossett filed a complaint in the United States District Court for the Northern District of Mississippi against Allegiance Specialty[1] Hospital of Greenville, LLC, alleging various claims arising from the termination of his employment by Allegiance. Doc. #1. Because the complaint contained "an insufficient basis for diversity jurisdiction,"[2] Gossett filed an amended complaint on April 29, 2020. Doc. #10. The amended complaint, which asserts both federal question and diversity jurisdiction, includes six claims: (1) "Outrageous & 'Bad

---

[1] Both the original complaint and amended complaint use "Speciality" in the caption and "Specialty" in their body. *See* Docs. #1, #10. The Court will not alter the caption. But because the defendant has used "Specialty" in all of its filings, the Court uses "Specialty" in the body of this order.

[2] Doc. #13 at 4.

Faith' Breach of Contract;" (2) "Breach of Contract;" (3) "Intentional Infliction of Emotional Distress;" (4) "Discrimination – Race - Wrongful Termination under Title VII & Section 1981;" (5) "Discrimination – Hostile Work Environment - Wrongful Termination under *Title VII & Section 1981*;" and (6) "Discrimination Terminated Due Previously Disclosed Criminal History - Wrongful Termination under *Title VII & Section 1981*." *Id.* at 3–8.

Allegiance moved for summary judgment on all of Gossett's claims on March 15, 2021. Doc. #28. The motion is fully briefed. Docs. #29, #35,[3] #40. On August 13, 2021, Allegiance filed two separate motions in limine. Docs. #41, #43. Gossett filed a response to each ten days later. Docs. #45, #46.

## II
## Standard of Review

A court shall enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (internal quotation marks omitted).

The "party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Jones*, 936 F.3d at 321 (alterations omitted). When the movant would not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019).

---

[3] In violation of the Local Rules, Gossett failed to include "both an exhibit letter or number *and a meaningful description*" of each of his exhibits. L.U. Civ. R. 7(b)(2) (emphasis added); *see* Docs. #34-1 to #34-12.

If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321 (cleaned up).

### III
### Relevant Facts

Gossett, who is black,[4] was convicted of murder in Washington County, Mississippi, in 1991. Doc. #28-1 at 8. His conviction was not overturned on appeal, expunged, or pardoned. *Id.* After serving thirteen years in prison, he was released on parole in 2004. *Id.* at 8–9.

On April 3, 2013, Gossett submitted an application for a materials management assistant position with Allegiance. Doc. #34-1 at PageID 1159, 1164. One of the questions on the application asked, "Have you ever been convicted or pleaded guilty or no contest to any criminal offense?" *Id.* at PageID 1161. Gossett checked "yes." *Id.* A subsequent portion of the application stated, "If you answered 'yes' to [the criminal offense question], please briefly describe the circumstances of your conviction indicating the date, nature and place of the offense and disposition of the case." *Id.* Gossett wrote "N/A" in response to this part of the application. *Id.* The application also indicated that Sharon Taylor referred Gossett to Allegiance. *Id.*

Under Allegiance's policy, only Vearnail Herzog, as the CEO, has hiring authority. Doc. #28-4 at 8; Doc. #28-3 at 11. But Herzog lets "each department director … interview and hire their own people." Doc. #28-2 at 13. Under Allegiance's "standard protocol," when considering applicants, the Human Resources Director runs background checks and, "if they come back with anything at all on them," provides them to Herzog for review. *Id.* at 8–9. Taylor was the Human Resources Director when Gossett applied at Allegiance. Doc. #28-4 at 16; *see* Doc. #28-5 at 26.

---

[4] Doc. #28-4 at 12; *see* Doc. #28-1 at 77 (Gossett is known as "Rico").

Gossett met with both Taylor and Chad Smith, the materials director, and discussed a position at the hospital. Doc. #28-1 at 47–48, 50–53. According to Gossett, he disclosed his previous conviction to both of them.[5] *Id.* at 51. The background check on Gossett showed that he "may have one of the disqualifying events specified in § 43-11-13."[6] Doc. #34-1 at PageID 1156. Taylor and Smith subsequently chose to hire Gossett as a materials management assistant. Doc. #28-1 at 57, 80. Neither Taylor nor Smith disclosed Gossett's conviction to Herzog before hiring Gossett. Doc. #28-4 at 7. Gossett did not sign an employment contract and there were no guarantees about how long he would work for Allegiance. Doc. #28-1 at 80–81.

Gossett was later promoted to materials director by Herzog and Taylor. *Id.* at 71. He did not sign an employment contract for his new position or complete a new application. *Id.* at 81–82. Gossett was provided an employee handbook "at some point" but "never read it." *Id.* at 66–67. Sometime after Gossett's promotion, Velma Melton replaced Taylor as the Human Resources Director. *See* Doc. #28-5 at 26. Melton knew of Gossett's conviction but "did not see anything wrong" with him working at the hospital. Doc. #28-3 at 12–13.

On October 11, 2017, Gossett was involved in a physical altercation at a local store. *See* Doc. #34-5; Doc. #40-1. At some point after the altercation, Melton informed Herzog "that the police could be on the floor looking for" Gossett because of the altercation.[7] Doc. #28-2 at 8.

---

[5] Smith's affidavit states that he "had no knowledge of Gossett's felony conviction and it was not discussed during the interview" but that Taylor "instructed [Smith] to offer employment to Gossett and allow him to start work before the background check was completed." Doc. #34-11 at PageID 1651.

[6] Section 43-11-13 provides:

> If the criminal history record check discloses a felony conviction, guilty plea or plea of nolo contendere to a felony of possession or sale of drugs, murder, [or] manslaughter … that has not been reversed on appeal or for which a pardon has not been granted, the employee applicant shall not be eligible to be employed by the covered entity.

Miss. Code Ann. § 43-11-13(b).

[7] Melton's and Herzog's accounts vary as to when Melton told Herzog about the altercation. Melton testified the altercation occurred in June or July 2018 "right before Mr. Gossett went on vacation" and she told Herzog about it the next day. Doc. #28-3 at 8–9. Herzog testified Melton told her about the altercation the week before Gossett was

After Melton told Herzog that Gossett had "already been in some trouble," Herzog asked Melton for Gossett's employee file. Doc. #28-3 at 11. Herzog did not know about Gossett's felony conviction before that day and had not seen his background check. Doc. #28-2 at 8–9.

After reviewing Gossett's file, Herzog contacted Allegiance's corporate office. *Id.* at 9. Herzog was advised that someone with a felony conviction cannot work at Allegiance. Doc. #28-5 at 18. Herzog also contacted the Mississippi State Department of Health and asked, hypothetically, what her options were if she "had someone convicted of a felony that had been working for many years." Doc. #28-2 at 14. Herzog was advised that under Mississippi State Department of Health regulations, an individual "cannot be employed by a hospital licensed in Mississippi if [he has] one of the excluded felony convictions," including murder. Doc. #28-5 at 15; Doc. #28-2 at 15. If the hospital retained someone with a felony conviction and that individual's file was pulled during one of the "site surveys," the hospital could lose its license. Doc. #28-2 at 16.

Herzog terminated Gossett on July 30, 2018, based on her understanding that his felony conviction "[g]oes against [the] standards of operation for [a] Mississippi Hospital." Doc. #34-1 at PageID 1151. According to Gossett, Herzog told him she received a phone call about him having a felony and that she had to terminate him effective immediately but she did not tell him anything about what was said during the phone call she referenced. Doc. #28-1 at 102–03.

Bill McCoy, who is white and was previously employed as a nurse by Allegiance, has a felony conviction.[8] Doc. #28-4 at 12, 15. However, his conviction was expunged. *Id.*; Doc. #28-

---

terminated, and an e-mail from Herzog confirms that Gossett was on vacation the week of July 24, 2018. Doc. #28-2 at 8; Doc. #40-2. Allegiance attempts to explain these differences by arguing that although the incident occurred in October 2017, Gossett was not arrested and did not enter a plea to the resulting simple assault charges until August 2018. *See* Doc. #40 at 12; Doc. #40-1.

[8] Gossett believed McCoy's conviction was related to drugs. Doc. #28-1 at 89–90. Herzog believed it was a possession and robbery charge. Doc. #28-2 at 12.

5

3 at 33. Gossett believes Anna Maucelli, another white Allegiance employee,[9] has a felony drug conviction. Doc. #28-1 at 91.

## IV
## Analysis

Allegiance argues summary judgment is proper because Gossett "cannot make out a *prima facia* [sic] case of discrimination because he was not qualified for the position;" "his conviction negates any claims under federal law for race discrimination;" and "[b]ecause he had no contract of employment, his state law claims also lack merit." Doc. #29 at 2.

### A. Race Discrimination Claims

Under Title VII, "it is unlawful for an employer … to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020) (cleaned up) (quoting 42 U.S.C. § 2000e-2(a)(1)). Similarly, 42 U.S.C. § 1981 "guarantees to all persons within the jurisdiction of the United States the same right to make and enforce contracts as is enjoyed by white citizens." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (cleaned up) (quoting 42 U.S.C. § 1981(a)). Where, as here, a plaintiff seeks to establish a claim under Title VII and § 1981 with only circumstantial evidence, the Court uses the *McDonnell Douglas* burden-shifting framework to assess the sufficiency of the evidence. *Harville v. City of Houston*, 945 F.3d 870, 874–75 & n.10 (5th Cir. 2019).

Under *McDonnell Douglas*, the plaintiff "has the initial burden to establish a prima facie

---

[9] Doc. #28-5 at 13.

6

case of discrimination."[10] *Id.* at 875.

> To establish a prima facie case of racial discrimination in employment, an employee must demonstrate that [he] (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. With respect to the similarly situated employees requirement, a plaintiff must show that he was treated less favorably than others under nearly identical circumstances.

*Morris v. Town of Independence*, 827 F.3d 396, 400–01 (5th Cir. 2016) (internal quotation marks omitted). After the plaintiff makes out a prima facie case, "the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016). If the employer does so, the plaintiff "must … produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Id.* (internal quotation marks omitted).

Allegiance argues Gossett's race discrimination claims fail because (1) Gossett "cannot demonstrate that he was qualified for the position from which he was terminated" since its policy and Mississippi law "disqualify applicants who have been convicted of murder" and (2) he "cannot show that similarly situated individuals outside his protected class were treated differently, nor were any individuals in 'nearly identical' circumstances." Doc. #29 at 14, 17–18. Gossett responds that (1) he was qualified for the position because "he was employed for the company and later promoted to the highest position within th[e] job description" and (2) he was treated less favorably than a similarly situated employee because Allegiance "did not terminate a Caucasian employee, who also had a felony record," and while Allegiance "points to [an] alleged expungement of the white employee [it] fails to offer any documents to substantiate the same."

---

[10] The elements of a discrimination claim brought under both Title VII and § 1981 are identical. *Pratt v. City of Houston*, 247 F.3d 601, 606 n.1 (5th Cir. 2001).

7

Doc. #35 at 14–15. Allegiance replies that (1) Gossett was also disqualified by hospital policy because "a later discovered criminal record subjects any employee to discharge" and (2) "it is Mr. Gossett's burden to establish the comparator is similarly situated" and Taylor testified that the comparator's conviction was expunged. Doc. #40 at 11, 13.

Assuming without deciding that Gossett was qualified for the position, he has failed to satisfy his burden of showing he was treated differently than a similarly situated employee under nearly identical circumstances. To demonstrate he was treated less favorably than others similarly situated under nearly identical circumstances, Gossett must show that

> the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Outley*, 840 F.3d at 218. The record shows that Gossett's first comparator, McCoy, was a nurse who had a previous, undetermined felony conviction for something other than murder that has since been expunged. *See* Doc. #28-4 at 12, 15. Thus, McCoy held a different position, was convicted of a different type of crime, and had obtained an expungement for his crimes. With regard to Maucelli, the only evidence in the record is Gossett's belief that she had a felony drug conviction. *See* Doc. #28-1 at 91. There is no confirmation of this conviction or evidence as to whether or not it was expunged or what position she held at Allegiance. Thus, Gossett has failed to show he was treated differently than either McCoy or Maucelli under nearly identical circumstances. Consequently, he cannot establish the fourth element of a prima facie case.[11] Summary judgment for Allegiance is proper on Gossett's federal discrimination claims.

---

[11] Because Gossett failed to establish his prima facie case, the Court need not consider whether Allegiance has offered a legitimate nondiscriminatory reason for its decision or whether its proffered reason is pretextual. The record appears to support though a finding of a legitimate nondiscriminatory reason—Gossett's prior felony conviction.

### B.  State Employment Claims

Allegiance argues that Gossett's state law claims must fail because he "had no employment contract[; t]here is no evidence which establishes any issue of fact regarding an implied contract[; and t]here are no state law employment claims which can be brought in the absence of such a contract."  Doc. #29 at 12.  "Gossett concedes there is no written employment contract between [Allegiance] and himself" but, relying on *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603 (Miss. 1993), argues his termination was unlawful "because it falls under the exceptions [to Mississippi's at-will employment doctrine]—refusing to succumb to [Allegiance's] illegal activity and his reporting of illegal activity."  Doc. #35 at 6–7.  Allegiance replies that any consideration of Gossett's *McArn* claim is improper because it is not properly before the Court and, should the Court consider the *McArn* claim, it fails on the merits.  Doc. #40 at 3–9.

Gossett's amended complaint asserts contract claims arising from his termination.  Doc. #10 at 3–5.  Because he has explicitly conceded there was no employment contract, Doc. #35 at 6, summary judgment on the contract claims is proper.

To the extent Gossett now attempts to assert a *McArn* claim, his amended complaint does not contain any mention of the claim or of the facts he alleges to support them.[12]  *See* Doc. #10.  "It is well settled in [the Fifth Circuit] that a claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."  *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (cleaned up).  While a district court may construe an argument raised in response to a dispositive motion as a motion for leave to amend,

---

[12] Gossett asserts that "Mississippi is a notice-pleading state" and his complaint "gives notice of a wrongful termination claim."  Doc. #35 at 6 n.18.  However, as Gossett filed this action in federal court, it is governed by the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 1.  Thus, he must satisfy the federal pleading standard and his amended complaint must contain enough facts to state a claim to relief that is plausible on its face.  *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016).  Because his amended complaint does not contain any facts related to his *McArn* claim, he has failed to meet this standard.

this sort of relief—"construing a request for *X* as an implied request for *Y*—is normally reserved for pro se litigants." *Id.* at 189. Because Gossett first asserted his *McArn* claim in response to Allegiance's motion for summary judgment and because Gossett at all times has been represented by counsel, his *McArn* claim is not properly before the Court and the Court declines to construe his *McArn* argument as a motion to further amend his complaint.

### C. Intentional Infliction of Emotional Distress

Allegiance argues that Gossett's intentional infliction of emotional distress claim is barred by a one-year statute of limitations and that such claims "do not lie for mere employment disputes." Doc. #29 at 12–13.

#### 1. Statute of limitations

Gossett argues the statute of limitations for his intentional infliction of emotional distress claim "did not run until a year after [he] received his right to sue letter." Doc. #35 at 11. However, the right to sue letter is not a part of the record and Gossett has not cited any deposition testimony regarding when he received the letter to show his claim is timely. Regardless, Allegiance's argument fails as the Mississippi Supreme Court recently held that the three-year statute of limitations of Mississippi Code § 15-1-49, rather than the previously applied one-year statute of limitations, applies to claims for intentional infliction of emotional distress. *Geico Cas. Co. v. Stapleton*, 315 So. 3d 464, 468 (Miss. 2021). Given that Gossett's termination occurred on July 30, 2018, and his amended complaint was filed on April 29, 2020, his claim is timely.

#### 2. Merits

In response to Allegiance's argument that an intentional infliction of emotional distress claim typically cannot be founded on an employment dispute, Gossett baldly asserts that Melton told Herzog of his conviction in an attempt to aid Gossett's wife in earning custody of their

10

daughter in divorce proceedings. Doc. #35 at 11. Based on this assertion, Gossett argues Melton's actions "are sufficient evidence to reveal conduct sufficiently 'outrageous' and 'extreme' to support an intentional infliction claim." *Id.* Allegiance replies that Melton's motivation for disclosing the felony conviction to Herzog is irrelevant because Gossett has not asserted his claim against Melton but rather his claim is based on his termination by Herzog. Doc. #40 at 9–10.

"To sustain a claim of intentional infliction of emotional distress, the defendants' conduct must be wanton and willful, as well as evoke outrage or revulsion. The severity of the acts should be such that they are atrocious and intolerable in a civilized society." *Collins v. City of Newton*, 240 So. 3d 1211, 1220 (Miss. 2018) (citations omitted). "Viable claims for intentional infliction of emotional distress in a workplace environment usually are limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *Id.* (internal quotation marks omitted).

There is insufficient evidence in the summary judgment record to support Gossett's intentional infliction of emotional distress claim. Even if the Court accepted Gossett's bald assertion that Melton informed Herzog of Gossett's conviction to interfere with his divorce proceeding, Herzog testified that she terminated Gossett based on his felony conviction after consulting with both the corporate office and state officials and learning of the risk of Allegiance losing its license if he remained employed there.[13] *See* Doc. #28-2 at 14–16; Doc. #28-5 at 15. There is no evidence this decision was "so outrageous that it goes beyond all possible bounds of decency." *Lambert v. Baptist Mem'l Hosp. N-Miss., Inc.*, 67 So. 3d 799, 805 (Miss. Ct. App. 2011) (no intentional infliction of emotional distress claim against hospital who terminated doctor based upon the professional opinion and report of another doctor). Accordingly, his intentional infliction

---

[13] Although Gossett disputes when Herzog learned of his conviction, he has not presented any evidence to contradict her statement that she terminated him after consulting with the Mississippi Department of Health and finding out that the hospital's license could be at risk if Allegiance continued to employ him.

11

of emotional distress claim fails.

## V
## Motions in Limine

Having found summary judgment proper on all of Gossett's claims, a trial in this case is not necessary. Accordingly, Allegiance's pending motions in limine will be denied as moot.

## VI
## Conclusion

Allegiance's motion for summary judgment [28] is **GRANTED**. Allegiance's motions in limine [41][43] are **DENIED as moot**. A final judgment will issue separately.

**SO ORDERED**, this 1st day of October, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**